## OLD DOMINION LAND CO. v. UNITED STATES.*

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2153.

1. **Eminent domain ⬅8—Act held to authorize condemnation proceedings.**
   An act appropriating money for the "completion of the acquisition of real estate in certain cases" *held* to authorize proceedings for the condemnation of property which was described in the act and for which a specific appropriation was made, though condemnation proceedings had not been previously instituted.

2. **Eminent domain ⬅67—Necessity of taking is legislative question.**
   The necessity of a taking of property for a public use is a legislative question, and the purpose of a taking, as expressed in an act of Congress, if plainly a public purpose, cannot be questioned by the courts.

3. **Eminent domain ⬅18—Condemnation of land for salvage of government property held for a "public purpose."**
   Where the government in time of war expended $1,500,000 in the construction of buildings on leased land, valued by a jury at $129,000, condemnation of the land, even though only for the purpose of saving a large loss to the government on the buildings, is for a "public purpose."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Purpose.]

4. **Eminent domain ⬅133—Value of buildings excluded in valuation of property in condemnation proceedings.**
   In proceedings by the United States for condemnation of land on which it had constructed buildings under a lease, with right of removal on expiration of the lease, the landowner is not entitled to have the value of the buildings included in valuation of the property.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Writ of error allowed 297 Fed. 1021.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Condemnation suit by the United States against the Old Dominion Land Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thomas H. Willcox, of Norfolk, Va., and J. Winston Read, of Newport News, Va. (R. G. Bickford, of Newport News, Va., on brief), for plaintiff in error.

Paul W. Kear, U. S. Atty., and Luther B. Way, Sp. Asst. U. S. Atty., both of Norfolk, Va.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The main question to be decided is whether the District Court was right in holding that the United States had the right to condemn certain lands of the Old Dominion Land Company and in refusing a motion to dismiss the proceedings. On July 1, 1918, the government leased three vacant tracts of land from the land company for the year beginning July 1, 1918. The lease was continued by renewals until July 1, 1922. The right of renewal included the period of the Great War and the time necessary for the return of federal troops from Europe. The contracts provided that all buildings and other improvements should remain the property of the government, with the right of removal during the lease and its renewals and within 30 days after the expiration of the term of the last renewal. The property was intended and was used in the construction thereon of quartermaster warehouses in connection with the embarkation of troops and the army supply base at Norfolk. The warehouses, railroad switches, and sidings and other structures cost the government $1,522,000. The land company refused to continue the renewal expiring June 30, 1922, and gave notice that it would hold the government to its contract period of 30 days in which it could remove the warehouses.

An effort was made by the Secretary of War to purchase the land in 1919, which was unsuccessful, because of failure to agree on the price. The Act of March 8, 1922 (42 Stat. 418), amended the Army Appropriation Act of 1919 (41 Stat. 104), "so as to release appropriations for the completion of the acquisition of real estate in certain cases and making additional appropriations therefor." This act contained the appropriation, "For quartermaster warehouses Newport News, Virginia, $223,670." The similar Appropriation Act of July 1, 1922 (42 Stat. 767, 777), appropriating funds for the acquisition of real estate in certain cases, specified, "For quartermaster warehouses at Newport News." These acts related to the property herein involved. On July 9, 1922, the War Department sought to acquire the land by purchase under authority of the statutes above recited, offering to pay $3,000 an acre. On July 28, 1922, the board of directors of the land company refused the offer, and notified the War Department of the refusal by letter on July 31, 1922, the day after the expiration of the 30 days within which the government had the right to remove the warehouses and other structures. On July 29, one day before the expiration of

the 30 days, the government filed its petition for the condemnation of the property.

[1] It is first argued against the right of condemnation that it is not authorized but negatived by the Acts of March 8 and July 1, 1922. The acts do say that the appropriations are made for the "completion of the acquisition of real estate, etc.," giving thus the general indication that the appropriations were to be applied in payment of purchase money contracted for or to be ascertained by condemnation proceedings already begun or authorized. But this general provision must yield to the clearly expressed particular provision that the property to be acquired was the land "for the quartermaster warehouses at Newport News," although no proceedings for its acquisition had been instituted. Such clearly expressed meaning cannot be altered by the tenor of preliminary committee reports or congressional discussion. United States v. Chase, 135 U. S. 255, 262, 10 Sup. Ct. 756, 34 L. Ed. 117.

[2] The position next taken is that the government is attempting to condemn land in order that it may save itself from the loss of the value of the warehouses and other structures placed on it, and that it has no intention of using the land for any public purpose, but on the contrary intends to lease or sell it to private persons for business purposes. The court cannot deny the truth or good faith of the expressed declaration in the statute that the property is to be taken for the plainly public use of quartermaster warehouses. In Sears v. City of Akron, 246 U. S. 242, 251, 38 Sup. Ct. 245, 248 (62 L. Ed. 688), the Supreme Court says:

"It is well settled that while the question whether the purpose of a taking is a public one is judicial, Hairston v. Danville & Western Ry. Co., 208 U. S. 598, the necessity and proper extent of a taking is a legislative question. Shoemaker v. United States, 147 U. S. 282, 298; United States v. Gettysburg Electric Ry. Co., 160 U. S. 668, 685; United States v. Chandler–Dunbar Water Power Co., 229 U. S. 53, 65." United States v. Des Moines Nav. & Ry. Co., 142 U. S. 510, 546, 12 Sup. Ct. 308, 35 L. Ed. 1099.

We do not think it appears that before the condemnation proceedings Congress had abandoned the purpose to use the property for the public purposes expressed in the statute. It is contended that the purpose of the government not to use the land for public purposes is shown by the fact that the Secretary of War before the institution of the condemnation proceedings had been negotiating for the sale of the land and warehouses as surplus property not needed by the government, and that on July 28, 1922, the Assistant Secretary of War executed a six months' lease of the property to Edward W. Walcott, revocable at the will of the Secretary of War. This does not justify the conclusion that the government intends to sell the property. The provision for the disposition of property by the Secretary of War contained in the Appropriation Act of 1919 does not seem to authorize the Secretary of War to dispose of property acquired after its passage.

[3] Even, however, if the Congress had expressed the intention to dispose of the warehouses and land, we think the condemnation would, nevertheless, have been for a public purpose and use. The term "public use" cannot be limited by inflexible definition. At one time the right

of condemnation for public parks and playgrounds, now unquestioned, was strenuously contested. Shoemaker v. United States, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170. The government in the haste and stress of war made many improvident contracts and expended vast sums of money in constructions for temporary use. We have before us one of these war investments of $1,522,000 in building warehouses and other structures on leased property valued by the jury at $129,700. At the time of the commencement of the condemnation proceedings the government had title to the warehouses and the right of removal, with one day in which to exercise the right. The defendant had no right whatever to the warehouses. Since the price of the land could not be agreed on, the only method of preventing an immense loss to the public and an immense unearned gain to the landowner was the condemnation of the land. To hold such a condemnation not to be for a public use would be to give away immense public treasure by a narrow and technical limitation of the meaning of "public use." Therefore, assuming that the condemnation was for the sole purpose of salvage of public treasure which would be saved in no other way, it was for a public use. This conclusion is in accord with the principle applied in Strickland v. Highland Boy Gold Mining Company, 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; Hairston v. Danville & Western Railway Company, 208 U. S. 598, 28 Sup. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Brown v. United States, 44 Sup. Ct. 92, 68 L. Ed. ——, decided November 12, 1923.

[4] The District Court charged the jury that they should take into consideration all elements entering into the value of the land, including the surrounding improvements. Error is assigned in the instruction that they were not to include the value of the warehouses and other structures put on the land by the government. Under the terms of the lease the government owned the warehouses, with the right of taking them away or destroying them. The defendant had no interest in them. Evidently, therefore, the defendant had no right to receive payment from the government for its own property. The case is much stronger against the defendants than Consolidated Turnpike Co. v. Norfolk & Ocean View Railway Co., 228 U. S. 596, 33 Sup. Ct. 605, 57 L. Ed. 982, wherein the owner of land was denied the value of improvements placed upon it.

Affirmed.