## UNITED STATES v. 243.22 ACRES OF LAND IN VILLAGE OF FARMINGDALE, TOWN OF BABYLON, SUFFOLK COUNTY, N. Y., et al.

### No. M–465.

District Court, E. D. New York.

Jan. 14, 1942.

Harry T. Dolan, Sp. Asst. to Atty. Gen. (Edward H. Murphy, Sp. Atty., Department of Justice, of New York City, of counsel), for the United States.

E. John Ernst, Jr., of New York City, for defendant Justine L. Lambert.

Samuel Rudykoff, of New York City, for Joseph W. Kay, 3d and Louis G. Wills.

Pruitt, Hale, MacIntyre, & Coursen, of New York City (Henry Y. Schooner, of New York City, of counsel), for American Airplane & Engine Corporation.

MOSCOWITZ, District Judge.

This is a motion to set aside a decision for the United States of America, the petitioner-plaintiff, after a trial before the Court without a jury. The defendant is not entitled to a jury trial as a matter of right in a condemnation proceeding. See opinion in this case filed October 31, 1941, D.C., 41 F.Supp. 805.

On December 19, 1940, the petitioner-plaintiff filed in the office of the Clerk of this Court in the manner prescribed by law a Declaration of Taking dated December 17, 1940, signed by Hon. Henry L. Stimson, Secretary of War. This Declaration of Taking contains a recital to the effect that the above mentioned land which is the subject of this condemnation proceeding is necessary for immediate public use, that the estate acquired in this proceeding is in fee simple absolute, and that the taking is pursuant to the authority of the Act of Congress approved July 2, 1940, 54 Stat. 712,

Public 703—76th Congress, 41 U.S.C.A. preceding section 1, and the Act of Congress approved February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. §§ 258a–258e. It is further stated in the Declaration of Taking that the purpose thereof is to expedite the building up of national defense. The Declaration contains a provision that the ultimate award of damages for the taking of the property will be within the limits prescribed by Congress to be paid as a price therefor. Attached to the Declaration, Schedule A, is a description of the property.

The petitioner-plaintiff deposited in the office of the Clerk of this Court the sum of $111,809.40 as the gross sum ascertained by the petitioner-plaintiff to be the fair and just compensation for the taking. The amount of deposit is to be determined by the Secretary of War and is not subject to review by the Court.

Simultaneously with the filing of the Declaration of Taking, the petitioner-plaintiff filed a notice and petition in condemnation (in the usual form) reciting the authority for the taking and praying that this Court may adjudge that the public use requires the condemnation of the property.

On December 20, 1940, a judgment on the Declaration of Taking was duly made by this Court, which judgment decreed that the possession of the property be delivered to the petitioner-plaintiff immediately. Possession was obtained thereafter by the petitioner-plaintiff.

Subsequently, and on the 24th day of September, 1941, the petitioner-plaintiff filed an amended notice and petition in condemnation which is in substance the same as the original petition. Upon the return day of the application for a judgment of condemnation an answer was interposed by the defendant Lambert. A meager memorandum consisting of six pages has been submitted by defendant's attorney in which the following two points are made:

"Point I. The Courts have the right to decide whether land is taken for a public use.

"Point II. The Court erred in excluding the proof offered through Lambert and Kellett."

There is very little discussion and the arguments are skeletonized.

The petitioner-plaintiff's attorney claims, and it is perhaps correct, that the answer to the amended notice and petition places in issue the following questions:

"(1) Denies that this Court has jurisdiction of the cause and subject matter of the action.

"(2) Denies that the lands as described in Paragraph IV of the petition are necessary to be acquired for the public use for military purposes.

"(3) Denies that the Secretary of War has found and determined after negotiations that he is unable to purchase said land at prices which he deems the fair and reasonable market value of said lands.

"(4) Denies that it is necessary and advantageous to acquire an estate in fee simple by condemnation under judicial process for the public use as above stated.

"(5) Alleges that the property sought to be acquired for the public use is actually being acquired for the use and benefit of the Republic Aviation Corporation.

"(6) Alleges that the petitioner-plaintiff, upon taking title, transferred and set over the beneficial use and enjoyment of the property to the Republic Aviation Corporation.

"(7) Alleges that any and all negotiations to acquire title for a fair price will not be engaged in by the Secretary of War but by the Republic Aviation Corporation.

"(8) Alleges that upon failure of negotiations to purchase said property at a private sale, the Secretary of War, at the instance and request of the Republic Aviation Corporation, filed the Declaration of Taking and instituted the condemnation proceeding herein referred to.

"(9) Alleges that upon acquiring title, pursuant to the Declaration of Taking aforesaid, the petitioner-plaintiff intends to transfer said title to the Republic Aviation Corporation in that the said Republic Aviation Corporation has the option of purchasing the property at a price equivalent to the award to be made in the condemnation proceeding.

"(10) Alleges that by reason of the aforesaid, the property sought to be taken is being taken for a private use in violation of the constitutional rights of the defendant, Justine L. Lambert.

"(11) That the Acts of Congress more specifically referred to in the Declaration of Taking and in the Amended Notice and Petition in Condemnation do not constitute due or proper authority for the taking of land of the defendant, Justine L. Lambert, and that, therefore, the acquisition of the said land is wholly illegal and without the authority of any law or enactment of the Congress of the United States.

"(12) Alleges that the sum of money estimated by the petitioner-plaintiff to be the just compensation for the property acquired is so grossly inadequate as to constitute an absolute disregard to the rights of the defendant, Justine L. Lambert, to just compensation, and is, therefore, in violation of the constitutional rights of the said defendant.

"(13) That the Amended Notice and Petition does not state facts sufficient to constitute a cause of action."

Although, as above noted, all of these subjects are not briefed by the defendant.

Judging from the defendant's memorandum, it is perhaps the intention of the defendant to abandon most of the issues originally raised. However, the Court has considered all of the above mentioned thirteen questions raised by the defendant's answer and finds that the defendant's position with respect to each of these questions is untenable.

■ It can not be open to serious question that this Court has jurisdiction of the cause and subject matter. Article III, Section 2 of the Constitution of the United States; 40 U.S.C.A. § 257; 50 U.S.C.A. § 171; Chappell v. United States, 4 Cir., 81 F. 764; United States v. Certain Land in Town of New Castle, Rockingham County, C.C., 165 F. 783; United States v. Crary, 1 F. Supp. 406; United States v. Nudelman, 7 Cir., 104 F.2d 549.

■ The Court cannot consider the desirability and necessity of taking private property for public use. The Act of Congress approved July 2, 1940 (54 Stat. 712, Public No. 703-76th Congress), is entitled "To expedite the strengthening of the national defense." It provides:

"That (a) in order to expedite the building up of the national defense, the Secretary of War is authorized, out of the monies appropriated for the War Department for national-defense purposes for the fiscal year ending June 30, 1941, with or without advertising, (1) to provide for the necessary construction, rehabilitation, conversion, and installation at military posts, depots, stations, or other localities, of plants, buildings, facilities, utilities, and appurtenances thereto (including Government-owned facilities at privately owned plants and the expansion of such plants, and the acquisition of such land, and the

purchase or lease of such structures, as may be necessary), for the development, manufacture, maintenance, and storage of military equipment, munitions, and supplies, and for shelter; * * *

"(b) The Secretary of War is further authorized, with or without advertising, to provide for the operation and maintenance of any plants, buildings, facilities, utilities, and appurtenances thereto constructed pursuant to the authorizations contained in this section and section 5, either by means of Government personnel or through the agency of selected qualified commercial manufacturers under contracts entered into with them, and, when he deems it necessary in the interest of the national defense, to lease, sell, or otherwise dispose of, any such plants, buildings, facilities, utilities, appurtenances thereto, and land, under such terms and conditions as he may deem advisable, and without regard to the provisions of section 321 of the Act of June 30, 1932 (47 Stat. 412)."

The Congress has expressly provided in this Act that the Secretary of War may acquire for national defense, with or without advertising, land and the purchase or lease of such structures for the development, manufacture, maintenance, and storage of military equipment, munitions, and supplies, and for shelter, and the Secretary of War is further authorized when he deems it necessary in the interest of national defense to provide for the operation and maintenance of any plants, buildings, facilities, utilities and appurtenances thereto either by means of Government personnel or through the agency of selected qualified commercial manufacturers, and when he deems it necessary in the interest of the national defense to lease, sell, or otherwise dispose of, any such plants, buildings, facilities, utilities, appurtenances thereto, and land, under such terms and conditions as he may deem advisable.

The Congress has clothed the Secretary of War with full power and authority to expedite and strengthen the national defense, and the discretion exercised by the Secretary of War is not subject to judicial review. The Court cannot substitute its judgment for that of the Secretary of War. The Congress deemed it necessary and essential to place the responsibility relating to the acquisition of property where it rightfully belongs—in the hands of the Secretary of War. If a Court in a given case should decide that the discretion of the Secretary of War should have been exercised in a different direction, it would be in effect legislating instead of performing a judicial function. See Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; United States v. Chandler-Dunbar Water Power Company, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063; United States v. Forbes, D.C., 259 F. 585, affirmed 5 Cir., 268 F. 273.

■ The Congress may properly delegate to individuals or to corporations power to condemn and to exercise the prerogative of eminent domain to carry out its legislative intent. See Chappell v. United States, supra.

■ Title 40 U.S.C.A. § 258 deals with practice, pleadings, forms and proceedings and not with matters of substantive law. The requirement under the New York Condemnation Law, Section 4, Subdivision 5, McKinney's Consolidated Laws, c. 73, Vol. 9a, for negotiations with an owner as a condition precedent to the institution of a proceeding to condemn property, cannot be regarded as procedural; therefore New York law does not apply. See United States v. Certain Lands in Borough of Brooklyn and Allrich Luhrs et al., D.C., 39 F.Supp. 91. While Section 258 provides that the practice, pleadings, forms and proceedings in condemnation proceedings under Section 257 of Title 40 U.S.C.A. shall conform, as near as may be, to the practice, pleadings, forms and proceedings in the State Court within which the District Court is held, the following Sections 258a of Title 40 U.S.C.A. and 171 of Title 50 U.S.C.A., which must be construed with Section 258, impose no such condition requiring the plaintiff to show that it is unable to agree with the owner of the property for its purchase and the reason for such inability.

■ There is no burden upon the Government to establish the necessity of resorting to eminent domain. This was not the intention of the Congress. To hold otherwise would interfere with the national defense. See In re Secretary of Treasury of United States, C.C., 45 F. 396, 11 L.R.A. 275; United States v. Gideon-Anderson Co. et al., D.C., 16 F.Supp. 627.

■ The letter from the Secretary of War to the Attorney General is sufficient to authorize the institution of condemna-

tion proceedings. See Old Dominion Land Co. v. United States, 4 Cir., 296 F. 20, affirmed 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162. The letter from the Secretary of War reads as follows:

"War Department
"Washington
"December 17, 1940

"The Honorable,
"The Attorney General,
"Dear Mr. Attorney General:

"It is necessary and advantageous to the interest of the United States that certain parcels of land located in the Village of Farmingdale, Town of Babylon, County of Suffolk, State of New York be acquired by the United States of America for military purposes.

"Therefore, pursuant to the provisions contained in the Act of Congress approved July 2, 1940 (54 Stat. 712) Public No. 703-76th Congress, and the Act of Congress approved February 26, 1931 (46 Stat. 1421), it is requested that you cause the necessary proceedings to be instituted for the condemnation of the fee simple title to those certain parcels of land situate in the Village of Farmingdale, Town of Babylon, County of Suffolk, State of New York comprising 242,879 acres of land, more or less, and more particularly described in the enclosed declaration of taking executed by the Secretary of War on November 25, 1940, which it is also requested be filed in conjunction with the proceeding as immediate possession of the property referred to is necessary for military purposes.

"The Act of Congress approved July 2, 1940 (54 Stat. 712) Public No. 703—76th Congress appropriated funds for such purposes.

"The enclosed declaration of taking also sets forth the amount ascertained to be just compensation for the taking, namely, $111,809.40, check for which amount, payable to the order of the Clerk of the United States District Court, Eastern District of New York, is enclosed for deposit in the registry of the court. Also enclosed are three photostat copies of the declaration of taking for your use.

"Sincerely yours,
"2 Inclosures: (s) Henry L. Stimson
"#1 Dec. of Tak. Secretary of War."
 (in quadruplicate).
"#2 check

 It cannot be open to serious question that the taking of the property was to aid the national defense program, therefore the taking by the Government is for a public use. The Congress has authorized the Secretary of War in his discretion to provide for the necessary construction and rehabilitation at military posts or other localities of plants, buildings, facilities, utilities, and appurtenances thereto "including Government-owned facilities at privately owned plants and the expansion of such plants, and the acquisition of such land, and the purchase or lease of such structures, as may be necessary." The Secretary of War has declared that the property be acquired for national defense. At the time this Declaration was made this country was not at war. There is no provision of law that this country must be at war before preparing for its defense. The Congress had the power and it was certainly wisdom on its part to prepare for defense in advance of the war. Here, in this case, the taking was for the development, manufacture, maintenance and storage of military equipment, munitions and supplies.

 The defendant attempted to prove that the Secretary of War entered into emergency plant facilities and supply contracts with the American Airplane and Engine Corporation, a domestic, non-governmental corporation, and that said contracts had a provision for the delivery of airplane engines and, if need be, additional land was to be acquired, and further the contract provided for the expansion of the existing plant, if need be, and that the land was to be acquired by the Secretary of War for that purpose. The indicated proof was to the effect that the American Airplane and Engine Corporation would finance the cost of the proceeding, land, plant and facilities and it was to be reimbursed by the Government for such expenditures in installment payments, further that during the period of the contract it was to be permitted to use these facilities in carrying out the supply contracts, and that upon the termination of the contract it had the option to purchase the land, improvements and facilities at actual cost to the Government less depreciation. The defendant further offered to prove the conversations and negotiations between the Republic Aviation Corporation and the defendant prior to the taking of the property by the Government. All of this testimony was excluded as immaterial and irrelevant. Upon reflection the Court will adhere to its ruling.

 The taking was lawful. The Congress has authorized the Secretary of War

in his discretion to make disposition of the property—there is no necessity for the Government continuing to own property. The Secretary of War is permitted under the Act not only to provide for the operation and maintenance of plants, etc., constructed by the Government or by some individual or corporation; he may also dispose of such property under the terms and conditions as he deems advisable—the matter is left to his discretion.

 The theory back of eminent domain is that the Government acquires property for the benefit of the Government, the property that it needs in order to perform a Governmental function. The Government may not acquire property for private use or where it may be of no benefit to the public. The Government is not required to condemn an entire plant where munitions were being manufactured; this would of necessity increase the tax burden.

 The Act authorizes the Secretary of War to provide for plants, buildings, etc., at military posts, depots, stations, etc., including Government owned facilities at privately-owned plants, for the expansion of such plants and the acquisition of such land and the purchase or lease of such structures as may be necessary. The language of this Act is not open to doubt. It is plain and concise and does not violate the Constitution; it provides for compensation to the owners of the property condemned. The Government may acquire property for the use and occupation of another agent whether it be Governmental or non-governmental in order to aid the national defense.

 This country is at war. Under the Constitution the Congress has the power to declare war—that is not an empty gesture. It may provide for the prosecution of the war, which is certainly for the defense of this country.

The following quotation from the Court's opinion in the case of United States v. .073 Acres of Land, more or less, situate in Pinelawn, Town of Babylon, County of Suffolk, State of New York, and Michael F. Riley et al., D.C., 42 F.Supp. 423, 424, filed December 31, 1941, applies to this case with equal force:

"The Court refused to accept evidence offered by Krieg tending to prove that the property was being condemned to expand the facilities of Fairchild Engine and Airplane Corporation. At the close of defendant's case, the Court rendered a decree for the United States.

"In essence, the various allegations made by the defendant Krieg and the various defenses raised by him can be reduced to the single contention that the land in question was taken not for a public but for a private use. The extended citations of authority by the defendant do little more than reiterate accepted propositions of law such as the requirement that property cannot be taken for a purely private use. The problem at the moment, however, as it is in so many cases is that of applying accepted rules of law to the present set of facts.

"Total war as we have come to know it has meant total preparation and in that total preparation must go every facility, every resource and every ability which we have at our command. This Court can take judicial knowledge of the fact that aircraft production was, at the time this land was condemned, vital to the national defense, and now is essential to successful prosecution of the conflict in which we are now engaged.

"To find a source of authority, one need go no further than to Article I, Sec. 8 of the Constitution of the United States wherein it is provided that 'The Congress shall have Power * * *

" '11. To declare War, * * *;

" '12. To raise and support Armies, * * *;

" '13. * * * To provide and maintain a Navy; * * *

" '18. To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.'

"In the exercise of the powers thus granted, Congress has passed the statutes referred to above and the Secretary of War in the performance of his duties under the Statute has determined that the land was necessary for military purposes. Even assuming that the defendant Krieg could establish beyond doubt that the land was condemned for no purpose other than to turn it over to the Fairchild Engine and Airplane Corporation, it is admitted that the production of this corporation was going to the use of the United States. Public use cannot be so narrowly defined as to be delimited to actual physical use by the public. In a period of national emergency it

must be defined rather in terms of public need and necessity and with full regard to the general welfare. If military production can be stepped up by expanding the facilities of private corporations with Government assistance rather than by waiting for normal peacetime expansion of industry, then this Court should not be the arbiter of what manner of proceeding will best serve the public advantage."

The discretion exercised by the Secretary of War is not subject to judicial review. The Congress has empowered him to act. This condemnation proceeding should go forward.

Motion to set aside the decision of this Court granting the condemnation is denied.

Settle order on notice.