219 F.2d 90
 The UNITED STATES of America, Plaintiff-Appellant,
v.
MERCHANTS MATRIX CUR SYNDICATE, Inc., and Intertype
Corporation, Cross-Claimants-Appellees.
INTERTYPE CORPORATION, Cross-Claimant-Appellee,
v.
CLARK-CONGRESS CORPORATION, Cross-Defendant-Appellant.
MERCHANTS MATRIX CUT SYNDICATE, Inc., Cross-Claimant-Appelllee,
v.
CLARK-CONGRESS CORPORATION, Cross-Defendant-Appellant.
THE ADVERTISING CHECKING BUREAU, Inc., Cross-Claimant-Appellee,
v.
CLARK-CONGRESS CORPORATION, Cross-Defendant-Appellant.
 Nos. 11017-11020.
 United States Court of Appeals, Seventh Circuit.
 Jan. 17, 1955.
Rehearings Denied in 11017, 11019, 11020 Feb. 23, 1955.
 
 Robert Tieken, U.S. Atty., Chicago, Ill., Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, George S. Swarth, Attys., U.S. Dept. of Justice, Washington, D.C., for appellant.
 Sherwood K. Platt, Edward B. Lucius, Edward G. Lucius, Chicago, Ill., Frank W. Sullivan, Chicago, Ill., Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel, for appellees. No. 11019:
 Harry E. Smoot, Chicago, Ill., Claude A. Roth, Chicago, Ill., Gottlieb & Schwartz, Chicago, Ill., of counsel, for cross-defendant-appellant.
 Edward B. Lucius, Edward G. Lucius, Chicago, Ill., for Merchants Matrix Cut Syndicate, Inc., cross-claimant-appellee. Nos. 11018-11020:
 Sherwood K. Platt, Frank W. Sullivan, Chicago, Ill., Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel, Edward B. Lucius, Edward G. Lucius, Horace A. Young, Chicago, Ill., for appellees.
 Claude A. Roth, Chicago, Ill., Harry E. Smott, Chicago, Ill., Gottlieb & Schwartz, Chicago, Ill., of counsel for cross-defendant-appellant.
 Perry W. Morton, Roger P. Marquis, George S. Swarth, for the United States as Amicus Curiae.
 Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Condemnation proceedings[1] involving leasehold interests, are here reviewed under the Government's notice of appeal, and three such notices filed by Clark-Congress Corporation. After judgment was entered, January 29, 1953, on jury verdicts of compensation for taking by eminent domain, the Government moved for a new trial and, in the alternative, for judgment notwithstanding verdicts under Rule 50(b), Fed.R.Civ.Proc., 28 U.S.C.A. Clark-Congress, on the other hand, seeks reversal of a final judgment entered January 26, 1953 against it on two cross-claims and a counterclaim, prosecuted by its three co-defendants. Under these latter three notices of appeal, findings of fact and conclusions of law made by the trial judge, on this aspect of the case, are brought up for our examination.
 
 
 2
 Prior to any proceedings, now under scrutiny, Clark-Congress acquired five ground leases[2] of land in Chicago, Illinois, on which the Rand McNally Building is situated. Initially, Merchants Matrix Cut Syndicate, Inc., and Intertype Corporation were tenants of the Rand McNally Company for terms hereinafter itemized. Their two leases were assigned June 30, 1949 by that Company to Clark-Congress which, itself, executed other leases with Advertising Checking Bureau, Inc., and Merchants, as follows:
 
 
 3
 By its agreement dated June 22, 1951, Clark-Congress, leased the entire Rand McNally Building to the United States of America, commencing January 1, 1952, and ending December 31, 1956, subject to extension and earlier termination. Clause 25 of the lease contains, inter alia, this wording: 'This lease has been entered into by the parties in lieu of condemnation proceedings or an award therein, the Government having indicated that it was considering condemnation proceedings to acquire the rights herein granted to the Government.'
 
 
 4
 At this juncture it is pertinent to parenthetically note that Rule 71A, and the amendment to Rule 81(a), Federal Rules of Civil Procedure, 28 U.S.C.A. became effective August 1, 1951, 341 U.S. 959, 962.
 
 
 5
 Under its declaration[3] of taking, filed December 12, 1951, coupled with a complaint in condemnation, the Government, pursuant to the request of the Administrator of General Services Administration, sought to acquire the right to use[4] and occupy space in the Rand McNally Building for the housing of federal agencies outside the District of Columbia. Merchants Matrix Cut Syndicate, The Advertising Checking Bureau, Illinois corporations, and Intertype Corporation, a New York corporation, each occupying various areas of the space involved were made parties defendant along with their lessor, Clark-Congress Corporation.[5]
 
 
 6
 By exercising its sovereign power, Kohl v. United States, 1875, 91 U.S. 367 23 L.Ed. 449, of eminent domain, the Government acquired a quantum of interest described in its declaration and complaint, as being: '. . . the right to use and occupy for a term of years commencing January 1, 1952, and ending December 31, 1956, extendible for an additional five-year term at the election of the United States, notice of which election shall be filed in the proceeding at least thirty (30) days prior to the end of the term thereby taken, together with the right to remove within a reasonable time after the expiration of the term or extension thereof any and all improvements and structures placed therein by or for the United States.'
 
 
 7
 After the government moved for an order directing delivery of possession, defendants Merchants and Advertising each filed answers containing cross-claims against their landlord, co-defendant, Clark-Congress; Intertype also answered, but counterclaimed against that co-defendant landlord.
 
 
 8
 Since appeals numbered 11018, 11019 and 11020 contain a core issue common to all three, stemming from an interpretation of Rule 71A, Fed.R.Civ.Proc., 28 U.S.C.A. 2072, we will consider that problem first.
 
 
 9
 The trial court denied motions to strike the cross-claims and counterclaims interposed by the Government and Clark-Congress Corporation, their challenges to these pleadings being bottomed on a theory of non-conformity with subdivision (e) of Rule 71A. Subsequently, Clark-Congress answered both cross-claim and counterclaim and, after a trial on the merits the judgment already mentioned was entered against Clark-Congress. Without a specific interdiction in Rule 71A against cross-claims or counterclaims we must decide if such pleadings may be presented, and claims asserted against co-party defendant Clark-Congress, in this condemnation case.
 
 
 10
 Rule 71A adopted pursuant to the Supreme Court's order,[6] dated April 30, 1951, 341 U.S. 962, abrogated paragraph (7) of Rule 81(a),[7] Federal Rules Civ. Proc., 28 U.S.C.A. 'The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain,' by the explicit terms of subparagraph (a) in Rule 71A, 'except as otherwise provided in this rule.' Its contents are focused upon procedural steps and simplified pleadings, without any mention of either counterclaim or cross-claim.
 
 
 11
 This is a rule built upon an area formerly wanting in uniformity (Report of the Advisory Committee on Federal Rules of Civil Procedure Recommending Amendments, 5 F.R.D. 339, 357) and for which no specific provision had been promulgated in the first set[8] of Rules of Civil Procedure, effective September 16, 1938, 28 U.S.C.A. following § 723c.
 
 
 12
 On June 10, 1947, the Advisory Committee, appointed by the Supreme Court, reported 7 F.R.D. 503 a preliminary draft of a proposed rule to govern condemnation cases. In their explanatory discussion (ibid, 514) this Committee noted that: '* * * Rule 71A will supply a uniform procedure to be used in all cases of condemnation suits invoking the national power of eminent domain and will supplant those statutes prescribing a different procedure, except where otherwise expressly so stated in the rule. Rule 71A is not intended to and does not supersede the Act of February 26, 1931, c. 307, §§ 1-5 (46 Stat. 1421), 40 U.S.C. 258a-258e, which is a supplementary condemnation statute, permissive in its nature and designed to permit the prompt acquisition of title by the United States pending the condemnation proceedings upon a deposit into court.'
 
 
 13
 Simply as indicative of their approach and perspective, we quote several passages from the Advisory Committee's commentary on Rule 71A, contained in their Report and transmitted with that Rule by Chief Justice Vinson to Congress:
 
 
 14
 'The purpose of Rule 71A is to provide a uniform procedure for condemnation in the federal district courts, including the District of Columbia. To achieve this purpose Rule 71A prescribes such specialized procedure as is required by condemnation proceedings, otherwise it utilizes the general framework of the Federal Rules where specific detail is unnecessary. The adoption of Rule 71A, of course, renders paragraph (7) of Rule 81(a) unnecessary, * * *.' 11 F.R.D. 213, 238, 239. (Emphasis supplied.)
 
 
 15
 'Since the general standards of pleading are stated in other rules, paragraph (2) (Rule 71A) prescribes only the necessary detail for condemnation proceedings * * *.' Id., 11 F.R.D. 240.
 
 
 16
 '* * * Departing from the scheme of Rule 12, subdivision (e) (Rule 71A) requires all defenses and objections to be presented in an answer and does not authorize a preliminary motion. There is little need for the latter in condemnation proceedings. The general standard of pleading is governed by other rules, particularly Rule 8, and this subdivision (e) merely prescribes what matters the answer should set forth. * * *' Id., 11 F.R.D. 241.
 
 
 17
 '* * * A condemnation action is a proceeding in rem. Commencement of the action as against a defendant by virtue of his joinder pursuant to subdivision (c)(2) is the point of cut off * * *.' Id., 11 F.R.D. 242.
 
 
 18
 Plainly, Rule 71A simply blueprints uniform procedure[9] to be followed for this specific class of case. We are asked to approve adversary litigation among these co-defendants because Rule 71A(a) orders the applicability of 'The Rules of Civil Procedure' and Rule 13,[10] thereof, authorizes counterclaims and crossclaims. In its amicus curiae brief, the Government[11] attaches much significance to this sentence: 'No other pleading or motion asserting any additional defense or objection shall be allowed', appearing in paragraph (e) of Rule 71A. 341 U.S. 959, 966. That sentence comes from the portion of Rule 71A treating with defendant's appearance or answer. If a defendant, in a condemnation proceeding has any 'objection or defense to the taking of his property' he must set up such matters in his answer. Merchants, Advertising and Intertype tacked their respective cross-claims and counterclaim to individual answers containing defensive allegations and statements of objections. But we think their asserted claims against Clark-Congress must be viewed and tested independently of any other associated pleadings they filed. For if these three claims are out of place in this condemnation case their status is neither improved nor strengthened by mere incorporation in answers. We are aware of a historical antipathy toward mixing different kinds of actions in one proceeding. Our current view is incompatible with those expressed in United States v. 76.15 Acres of Land, More or Less, etc., D.C.N.D.Cal.1952, 103 F.Supp. 478, where cross-claims were rejected in an action for condemnation, because the California court thought the difference between a proceeding in rem and one in personam warranted such a ruling. But we think that solution rests upon an issue stated with deceptive conceptual simplicity.[12]
 
 
 19
 We have no precise authoritative indication that the Supreme Court, exercising its rule-making power, wished to countenance a determination of such claims, as are now before us, in eminent domain cases, unless it be said that the solution lies in the introductory paragraph (a) to Rule 71A. Cross-claims against co-defendants are so rare in condemnation cases we doubt if such matters were even considered in preparing Rule 71A. Yet, we are confronted with an express direction, in paragraph (a), seemingly giving full play to other Rules of Civil Procedure, 'except as otherwise provided' in Rule 71A. Silence of this latter Rule makes it necessary to examine Rule 13 under which Merchants, Advertising and Intertype seek shelter.
 
 
 20
 At the threshold we record our further awareness that Rule 13 would prevent circuity of actions and multiplicity of suits, indeed these were among the prime reasons stimulating its adoption; practicality, however, is the true taproot of Rule 13. We are cited to Collier v. Harvey, 10 Cir., 1949, 179 F.2d 664, where Chief Judge Phillips discussed the broad sweep of Rule 13(g), but not in relation to Rule 71A. Moore v. N.Y. Cotton Exchange, 1926, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, is also brought to our attention for an interpretation of 'transaction' announced by the Supreme Court upon examination of former Equity Rule 30, from which Rule 13 was derived. Close scrutiny of facts and circumstances involved in various other opinions relied on by Merchants, Advertising and Intertype show they each fail to bridge the gap between Rule 13 and Rule 71A, especially since Rule 71A was adopted subsequently to the promulgation of Rule 13. Descriptions of attributes and inherent characteristics of Rule 13 furnish little aid in determining if a trial judge hearing eminent domain proceedings has jurisdiction to dispose of co-defendants' cross and counterclaims. Only by inserting a judicial rubric in Rule 71A could we interpret it as containing some lurking prohibition against invoking Rule 13. We read that Rule as it is written.[13] Empirical judgment inclines us away from letting Rule 13 become operative in these proceedings, but we refrain from invading the rule-maker's province or from fashioning policy.
 
 
 21
 By resolving contentions raised against applying Rule 13 to condemnation cases we come to the contents of these three claims and evidence introduced in support of them. Merchants, Intertype and Advertising postulate theories of conspiracy among and between, the Government, General Services Administration and Clark-Congress, as an apparatus for the condemnor to prematurely terminate those three tenancies derived from Clark-Congress, lessor. Cohesive substance for this plot, they allege, is supplied by the June 1951 lease between Clark-Congress and the Government, despite a clause, therein reciting that this lease was in lieu of condemnation. In short, these three claimants are unable to envisage consensual transactions in connection with condemnation proceedings. See: U.S. v. Certain Parcels of Land, etc., 1953, 345 U.S. 344, 348, 73 S.Ct. 693, 97 L.Ed. 1061; See also: U.S. v. Carmack, 1946, 329 U.S. 230, 243, 67 S.Ct. 252, 91 L.Ed. 209. But all titles to, and interests in, lands are held subject to the sovereign power of eminent domain. Goodyear Shoe Machinery v. Boston Terminal Co., 1900, 176 Mass. 115, 57 N.E. 214. Certainly, the Government's need for quarters shaped itself in obedience to currents other than those flowing from a plot with Clark-Congress. Indeed, these claimants do not go so far behind this taking, by urging a conspiracy to activate the Government power of eminent domain. What they describe equates to an arrangement whereby Clark-Congress leased their spaces, in the Rand-McNally Building, to the Government, so that when the sovereign thus became a cotenant, with them, it could embark on 'a course of harassment, pressure and threats' looking toward compelling these three tenants to abandon or surrender possession. Relying on that pattern, sketched in their pleadings, each claimant urges breaches and violations of covenants of quiet enjoyment and peaceable possession because Clark-Congress, allegedly, ratified, sanctioned and acquiesced in the Governmental acts culminating with instituting this condemnation case. Regardless of how it is articulated each such pleading reverts to, and each is bottomed, on, claiming damages because these three tenants had to find quarters elsewhere, and move. Whether the ultimate theory of recovery against Clark-Congress is conveniently blurred in the pleadings or evidence is now beside the mark, since a declaration of taking was filed and processed. Merchants, Intertype and Clark-Congress were entitled to just compensation[14] and no more under U.S.Const. Amend. V. See: United States v. General Motors Corp., 1945, 323 U.S. 373, 382, 65 S.Ct. 357, 89 L.Ed. 311. Their interests were acquired by and to the extent of that declaration of taking. 46 Stat. 1421, 40 U.S.C.A. 257, 258a et seq. Consequently their attempts to isolate some fragment of the total acquisition process carries compensation beyond the bounds delineated in the Fifth Amendment. Governmental taking of private property for public use requires payment of just compensation to Merchants, Intertype and ordinarily to Advertising,[15] but these three tenants cannot improve on the amount of compensation by taking damages from their landlord.[16] It would be a strange index of the compensatory redress for the acquisition of private property through eminent domain proceedings to allow these three tenants recovery from their landlord for moving, packing and other expenses.
 
 
 22
 Their landlord, Clark-Congress, moved for a new trial pursuant to Rule 59, Fed.R.Civ.Proc., 28 U.S.C.A. and by appropriate motion under Rule 52(b), Fed.R.Civ.Proc. 28 U.S.C.A., sought to have the trial judge amend his findings of fact; at the same time stating objections to the recorded findings. Both motions were overruled. While the challenged findings are detailed, they are estranged from significant items of evidence disclosed by this record. Of course, we are not now retrying issues of fact nor trenching upon the province allotted a trier of facts below. But we do think that the findings, inter alia, which exhibit computations of damages predicated upon the 'cost of moving out' of the premises in question, flow from errors of law impairing the three judgments against Clark-Congress. Moving expenses are so inextricably woven into the termination of these leases upon the taking of the Government (U.S. v. Advertising Checking Bureau, 7 Cir., 1953, 204 F.2d 770, 772) that they cannot be recovered indirectly, or on the side.
 
 
 23
 Various elements itemized by the trial judge in his findings of 'actual damage,' and underlying the three judgments he entered against Clark-Congress, bear striking resemblance to those which the respondent in United States v. General Motors Corp., 1945, 323 U.S. 373, 376, 65 S.Ct. 357, 89 L.Ed. 311, offered to prove on the issue of compensation from the Government. But such costs were not there tendered in support of a claim against a co-defendant landlord in Clark-Congress' position here. Moreover, only Intertype's lease, by its terms, extends beyond December 31, 1956; leases of Merchants and Advertising would have expired prior to that date. At this juncture we might well recall the Government pleading stating that its interest, acquired through condemnation was to be '* * * extendible for an additional five-year term * * *', after December 31, 1956.
 
 
 24
 Speaking for the majority in United States v. Westinghouse Elec. & Mfg. Co., 1950, 339 U.S. 261, 263-264, 70 S.Ct. 644, 646, 94 L.Ed. 816, Mr. Justice Frankfurter carefully delimited the holding of United States v. General Motors Corp., 1945, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, and stated, inter alia:'When there is an entire taking of a condemnee's property, whether that property represents the interest in a leasehold or a fee, the expenses of removal or of relocation are not to be included in valuing what is taken. That rule was found inapplicable to the new situation presented by the General Motors case-- inapplicable, that is, where what was to be valued was 'a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on the termination of the Government's use' * * *.
 
 
 25
 'Petty Motor (U.S. v. Petty Motor Co., 1946, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729) made clear that the taking of the whole of a tenant's lease does not fall within the General Motors doctrine * * *'.
 
 
 26
 Mirrored against these enunciations of basic principles, there emerges strong implications that Merchants, Intertype and Advertising were attempting to recover from Clark-Congress for items not compensable by the sovereign. Advertising was precluded from governmental compensation for the reasons we discussed in United States v. Advertising Checking Bureau, Inc., 7 Cir., 1953, 204 F.2d 770. And, Intertype argues (its brief, 46), as we just said, that such costs were not included in its award. Of course, Intertype's reasoning may explain why it pursues Clark-Congress, but that is hardly legalistic support for such cross-claim. Furthermore, as between Intertype and the Government, 'An award based on removal costs will of course be delayed until it is known whether the Government's occupancy has exhausted the tenant's leasehold.' United States v. Westinghouse Elec. & Mfg. Co., 1950, 339 U.S. 261, 268, 70 S.Ct. 644, 648, 94 L.Ed. 816.
 
 
 27
 All too frequently, profit seeking motives creep into condemnation cases. This observation, no doubt, will be distasteful to those who envisage the public treasury as fair game in such proceedings. Though competitive existence in our society may stimulate such desires, just compensation, only, remains the yardstick in eminent domain proceedings. Kimball Laundry Co. v. United States, 1949, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765, 7 A.L.R.2d 1280. When the Treasurer disburses compensation in obedience to an order of award, based on condemnation proceedings, public dollars stand in lieu of land, premises or interests, so acquired, and thereafter devoted to public use. 'The Constitution and the statutes', Mr. Justice Reed noted, delivering the majority opinion in United States v. Petty Motor Co., 1946, 327 U.S. 372, 377, 66 S.Ct. 596, 599, 90 L.Ed. 729, 'do not define the meaning of just compensation. But is has come to be recognized that just compensation is the value of the interest taken.'
 
 
 28
 A recital of various other pieces and portions of evidence disclosed by this record, is unnecessary to this opinion because we think United States v. Petty Motor Co., 1946, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729; United States v. General Motors Corp., 1945, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311; United States v. Westinghouse, 1950, 339 U.S. 261, 70 S.Ct. 644, 94 L.Ed. 816, contain the law applicable to, and determinative of, the major points raised by the Government's appeal in case number 11017. We think those three cited cases are the benchmarks by which the trial court should be guided on this remand.
 
 
 29
 Since condemnation juries are impaneled only for deciding compensation they commence deliberations in a positive awarding-state-of-mind. An especially delicate equilibrium, acutely sensitive to factors influencing the quantum of award, is present throughout such trials. Perhaps we are underscoring the obvious, but is our opinion that the jurors critical and difficult function, here, should not be further complicated by blurred and insufficient instructions or by improper arguments. (See e.g.: United States v. Miller, 1943, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336; Ramming Real Estate Co. v. United States, 8 Cir., 1941, 122 F.2d 892) concerning and pointing up deposits made by the Government pursuant to statute.
 
 
 30
 The judgment in case number 11017, are reversed and remanded to the District Court for a new trial and proceedings consistent with the views expressed in this opinion.
 
 
 31
 Each judgment entered on the respective cross-claims of Merchants Matrix Cut Syndicate, Inc., and Advertising Checking Bureau, Inc., and on the counterclaim of Intertype Corporation, being appeals numbered 11018, 11019 and 11020, is hereby reversed and remanded to the District Court with directions to sustain[17] the three motions of Clark-Congress Corporation to strike each cross-claim and the said counterclaim.
 
 
 32
 Reversed and remanded with directions.
 
 
 33
 Merchants $44,027.91
Intertype 41,498.98
Advertising 96,949.78
 
 
 34
 SWAIM, Circuit Judge.
 
 
 35
 I concur in the result.
 
 
 
 [1]
 Authority for this taking was set forth in the complaint, viz.: Act of August 1, 1888, 25 Stat. 357 U.S.C.A. title 40, § 257; Act of August 27, 1935, 49 Stat. 886, U.S.C.A. title 40, § 304c, as amended by the Act of June 14, 1946, 60 Stat. 257 and the Federal Property and Administrative Services Act of 1949, approved June 30, 1949, 63 Stat. 377, as amended
 
 
 [2]
 Clause 12, T.R. 980, in the lease between Clark-Congress Corporation and The United States of America describes these documents
 NOTE--Some parts of this form are wider than one screen. To view
 material that exceeds the width of this screen, use the right arrow
 key. To return to the original screen, use the left arrow key.
 RAND-McNALLY CLARK-CONGRESS
 --Lessor CORP.--Lessor
 Area Period Period
 Lease Commencing Lease Commencing
 Defendant Floor Sq. Dated Ending Dated Ending
 feet
 Merchants: 8th 10,0- May 19, June 16, Aug. 31,
 
 
 [00]
 
 1949 1949 1953
 Room Apr. May 1, Aug. 31
 
 
 [844]
 27,
 1951 1951 1953
 Advertising: 8th 20,0- Feb. May 1, Apr. 30,
 
 
 [00]
 10,
 1950 1950 1955
 Intertype: 10th 10,5- Nov. Jan. 1, Dec. 31
 
 
 [00]
 19,
 1948 1949 1958
 
 
 [3]
 For authority, Jess Larson, Administrator of General Services of the United States pleaded the: Act of August 1, 1888, 25 Stat. 357, U.S.C. Title 40, § 257; Act of February 26, 1931, 46 Stat. 1421, U.S.C. Title 40, § 258a to 258e; Act of August 27, 1935, 49 Stat. 886, U.S.C. Title 40, § 304c, as amended by the Act of June 14, 1946, 60 Stat. 257, and the Federal Property and Administrative Services Act of 1949, approved June 30, 1949, 63 Stat. 377, as amended
 
 
 [4]
 Pursuant to the Act of August 27, 1935, as amended, U.S.C.A. title 40, § 304c
 
 
 [5]
 Cross-claimants exhibit No. 1 consists of various documents issued by the Secretary of State of Illinois, concerning the dissolution of this corporate defendant. On December 27, 1951, the Secretary issued a certificate of dissolution
 
 
 [6]
 Such rule-making power stems from the Enabling Act. Act of June 19, 1934, c. 651, §§ 1, 2, 48 Stat. 1064, 28 U.S.C. 723b, 723c
 
 
 [7]
 Applicability of Federal Rules of Civil Procedure to condemnation proceedings, was formerly regulated by this portion of Rule 81, contained in its subparagraph (7): 'In proceedings for condemnation of property under the power of eminent domain, these rules govern appeals but are not otherwise applicable.'
 
 
 [8]
 'The Committee * * * drafted a Condemnation Rule which appeared for the first time as Rule 74 of the April 1937 Draft * * *' For various reasons '* * * the Advisory Committee in its Final Report to the Court in November 1937 proposed that all of Rule 74 be stricken and that the Federal Rules be made applicable only to appeals in condemnation cases * * * the Committee proposed a rule 71A, on the subject of condemnation in its Preliminary Draft of May 1944 * * * the amendments which the Court adopted in December 1946 did not deal with condemnation * * *.' 7 F.R.D. 503, 512. See also: Report of the Advisory Committee on Federal Rules of Civil Procedure Recommending Amendments, 5 F.R.D. 339, 357
 
 
 [9]
 '* * * in 1931 it was said that there were 269 different methods of judicial procedure in different classes of condemnation cases * * *.' 6 Nichols, Eminent Domain, 294 (§ 27.2(2)) citing the First Report of Judicial Council of Michigan (1931) § 46, pp. 55 ff
 Rule 71A supersedes the Conformity Act, 40 U.S.C.A. § 258. That statute treated with 'practice, pleadings, forms and proceedings and not with matters of substantive laws.' U.S. v. 243.22 Acres of Land, etc., 43 F.Supp. 561, 565; Id., 2 Cir., 1942, 129 F.2d 678.
 
 
 [10]
 See e.g. Douglas v. Wisconsin Alumni Research Foundation, D.C.N.D.Ill. 1948, 81 F.Supp. 167 on the compulsory counterclaim aspect and Kauffman v. Kebert, D.C.W.D.Pa. 1954, 16 F.R.D. 225. Judge Lindley, of our court, discussed jurisdictional problems stemming from counterclaims in Carter Oil Co. v. Wood, D.C.E.D.Ill. 1940, 30 F.Supp. 875; Lesnick v. Public Industrials Corp., 2 Cir., 1944, 144 F.2d 968
 Governmental Immunity From Counterclaims is treated by a note in 50 Col.L.Rev. 505 (1950); See also: Shulman and Jaegerman, Some Jurisdictional Limitations in Federal Procedure, 45 Yale L.J. 393, 410 (1936); A. M. Dobie, The Federal Rules of Civil Procedure, 25 Col.L.Rev. 261, 267 (1939).
 
 
 [11]
 Motions to strike parts of the answers, and cross-claims of Merchants and Advertising, and Intertype's counterclaim, were filed by the Government below
 
 
 [12]
 An interesting sidelight, here, is supplied by this colloquy during Proceedings of the Institute on Federal Rules, July 21, to 23, 1938, upon considerations of Rule 13:
 'Mr. J. R. Keaton: * * * Does that mean that if A should sue B for tort, an automobile accident, we will say, that B might come back with a promissory note and adjust that in the same suit?
 'Mr. Clark (then Dean, Yale University School of Law, Reporter to the Supreme Court Advisory Committee): It certainly does.'
 'Mr. Keaton: All of the claims, whether involving a contract or tort, can be settled in the same suit?
 'Mr. Clark. Yes. * * *'
 Speaking of freely filing counterclaims, Dean Clark continued' '* * * Why should you require, for example, that a party should pay $5000 on a promissory note when he is sued and is soon going to collect $5000 on a tort? Why shouldn't you settle it all at one time and have it ended?' Regarding (g), Dean Clark Remarked, inter alia, '* * * one defendant may make a cross-claim against another defendant. Fed.Rule Civ.Proc. Proceedings of the A.B.A. Inst., Cleveland, 1938, pp. 248 ff.
 After Dean Clark's appointment to the Second Circuit Court of Appeals he authored an article entitled Special Problems In Drafting And Interpreting Procedural Codes And Rules, 3 Vand.L.Rev. 493, 497 (1950) in which he ventilates some of the notions to which we refer.
 
 
 [13]
 e.g. Chief Judge Biggs held that Rule 52 applied to federal condemnation cases in United States v. Certain Parcels of Land in Philadelphia, 3 Cir., 1954, 215 F.2d 140, 145
 
 
 [14]
 Verdicts of the jury were as follows:
 'For the taking of the leasehold estate of Intertype Corporation * * * $131,500.00.' 'For the taking of the leasehold estate of Merchants Matrix Cut Syndicate, Inc. * * * the sum of $43,750.00.'
 Our previous opinion, United States v. Advertising Checking Bureau, 7 Cir., 1953, 204 F.2d 770, concerned the condemnation clause in Advertising's lease with Clark-Congress and we then held the trial judges ruling, that Advertising was entitled to no award, was correct.
 
 
 [15]
 This tenant, of course, covenanted away its right to compensation as we hereinafter point out
 
 
 [16]
 In his findings of fact, the trial judge, stated that 'actual damages' suffered were as follows:
 These damages were awarded to each claimant respectively because 'the uncontradicted evidence in this case shows that each claimant suffered the aforesaid actual damages by reason of the wrongful acts of Clark-Congress Corporation,' and three separate judgments entered accordingly.
 
 
 [17]
 Intertype states, in the argument portion, of its brief (p. 17) in Case No. 11018: 'In order to protect their rights in the event that the counterclaims and cross-claims should be disallowed in this case, and in order to avoid the running of the statute of limitations both as to filing of claims and the two-year limitation for bringing action against Clark-Congress Corporation which was voluntarily dissolved on December 27, 1951 * * *, the defendant tenants have filed similar claims against Clark-Congress Corporation and the Government under the Federal Tort Claims Act as noted at the bottom of page 14 of the Government's * * * brief.'
 The marginal note in the amicus curiae brief filed by the Government in Nos. 11018, 11019, 11020, follows: 'Another possible basis for financial interest of the United States in these cases arises from the fact that similar claims have been asserted under the Federal Tort Claims Act and are now pending in the court below. (p. 14.)